## PENDLETON v. UNITED STATES.

ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 53.   Argued January 21, 1910.—Decided February 21, 1910.

The retention by the prosecuting authorities, without using it on the trial, of a statement made by the accused, does not amount to compelling him to be a witness against himself within the provisions of Chap. 5 of the Philippine Act of Congress of July 1, 1902, 32 Stat. 691.

The Supreme Court of the Philippine Islands tries a criminal case on the record de novo, and if it avoids an error which may have been committed by the Court of First Instance, the judgment will not be reversed by this court on account of such error; and so held in this case in which the Court of First Instance took into consideration the fact that accused did not offer to testify on his own behalf, but the Supreme Court, on the accused's own appeal, declared that it did not take that fact into consideration but rendered its decision on the proofs.

7 Philippines, 457

THE facts are stated in the opinion.

Mr. Henry E. Davis and Mr. James H. Blount for plaintiff in error:

The neglect or refusal of accused to be a witness shall not in any manner prejudice or be used against him.  Military Order, No. 58, of April 23, 1900, 1 Pub. Laws Phil. Comm., § 15, subsec. 3, p. 1083; Kepner v. United States, 195 U. S. 112; Ruloff v. The People, 45 N. Y. 203; People v. Doyle, 58 Hun (N. Y.), 535; Wilson v. United States, 149 U. S. 60; Showalter v. State, 84 Indiana, 562, 566; Staple v. State, 89 Tennessee, 231; Commonwealth v. Scott, 123 Massachusetts, 239; Minor v. State, 120 Georgia, 490; Quinn v. The People, 123 Illinois, 333, 347; Dorr v. United States, 195 U. S. 138; State v. Brownfield, 15 Mo. App. 593; People v. Tyler, 36

California, 527; *Baker* v. *People*, 105 Illinois, 458; *Watt* v. *People*, 126 Illinois, 31; *State* v. *Ryan*, 70 Iowa, 156; *State* v. *Graham*, 62 Iowa, 111; *State* v. *Mosley*, 31 Kansas, 357; *State* v. *Banks*, 78 Maine, 492; *State* v. *Cleaves*, 59 Maine, 301; *People* v. *Rose*, 52 Hun (N. Y.), 29; *Reddick* v. *State* (Miss.), 16 So. Rep. 490; *Eubanks* v. *State*, 7 So. Rep. 426; *Yarborough* v. *State*, 70 Mississippi, 593; *State* v. *Howard*, 35 S. Car. 203; *Brazell* v. *State*, 29 Tex. Crim. App. 452; *Johnson* v. *State*, 31 Tex. Crim. Rep. 464; *Jordan* v. *State*, 29 Texas, 595; *Richardson* v. *State*, 27 S. W. Rep. 139; *State* v. *Chicell*, 36 W. Va. 659; Wharton's Crim. Ev. 435.

Military Order No. 58 is for the Philippine Islands what the Fifth Amendment is for the United States, and constitutional provisions for security of persons and property must be liberally construed. See *Boyd* v. *United States*, 116 U. S. 616, 635.

The action of the prosecuting attorney in holding on to the affidavit improperly obtained from accused prevented accused from taking the witness stand and was therefore prejudicial to his interests.

*Mr. Assistant Attorney General Russell* for the United States.

Mr. Justice McKenna delivered the opinion of the court:

Plaintiff in error was convicted of the crime of murder in the Court of First Instance of the Province of Cebu, Philippine Islands, and sentenced to twenty years' imprisonment, which was reduced to seventeen years by the Supreme Court.

The assignments of error are as follows:

"1. The accused has been compelled to be a witness against himself in violation of Article V of the law of Congress of July 1, 1902.

"2. The fact that the accused did not offer himself as a witness in his own favor has been used to his prejudice in violation of his right to remain silent until his guilt be established by the evidence beyond a reasonable doubt.

"3. The evidence does not show the guilt of accused of the crime imputed to him beyond a reasonable doubt."

The argument to support the first assignment of error is not very tangible. It is based upon an affidavit of defendant in error that he was subpœnaed as a witness and obeyed by going to the fiscal's, where he answered questions put to him without knowing that he had a right to refuse or being notified that he had such right, and not knowing that "the object of securing his statement was in order to search for proof against him." The affidavit also states that he was not represented by counsel, and did not know that he had a right to consult a lawyer. Motion was made, presumably based on the affidavit, for an order to the fiscal to return to the defendant the statement, together with all copies of the same, and that the fiscal be prohibited from using the statement in any manner whatever. Nothing seems to have been done with that motion, and subsequently it was repeated and denied on the ground "that it was not a proper time to make such motion, as the court could not then decide on the admissibility of proofs which had not yet been offered in the cause." An exception was entered.

It is not contended that the statement was afterwards used in any way, but the action of the court is urged nevertheless as an error "so grave and so material," to use counsel's words, "as to call for a new trial."

The argument to support it is based on suppositions of what might have been done, and the potency of the statement in the hands of the prosecuting officer. "It left the defendant open, it is said, to the fire of a masked battery." But the law has no measure to apply to such a situation. Defendant was certainly not disabled from telling the truth in other statements if he wished to make them, and to be able not to tell the truth can hardly be urged as a legal and constitutional right. The assignment of error, therefore, is not well taken.

The second assignment of error is that the fact that the

defendant did not offer himself as a witness was used against him. To support this contention certain remarks of the judge of the trial court in delivering sentence upon the defendant are quoted. The court said:

"The prosecution has presented an abundance of proof which, in case the court should give it full credence, would establish the guilt of the accused beyond all reasonable doubt. On the other hand, the defense has presented very little direct proof; the accused did not use his right to testify in his own favor, and no eyewitness has testified favorably to him. The defense has practically limited itself to insisting on: (1) Alleged contradictions between the various witnesses of the prosecution relating to the details of identical facts or happenings related by them. (2) Mistakes which they claim to be essential, in the testimony of the witnesses for the prosecution with respect to distances and relative positions of persons and objects connected with the case. (3) The expert testimony of two physicians that the deceased could not have died as the result of a wound received in the manner stated by the witnesses for the prosecution."

An analysis of this language is made by counsel and its relation to the general character of the evidence is discussed, and the conclusion deduced that the trial court urged three arguments to sustain its judgment: "First, paucity of proof in behalf of the defendant. Second, his failure to testify in his own favor. Third, his failure to get any eyewitness to the shooting, to rebut evidence of the Filipinos who claim to have been eyewitnesses." And to this summary, which, it is urged, demonstrates that the trial court considered in determining the guilt of defendant, that he failed to take the stand in his own behalf, there is added the comment of the Supreme Court of the islands in its review of the case, or rather in denying a motion for a new trial, after its decision of the case. Upon the first consideration of the case in the Supreme Court no assignment of error based on the point was made. It was raised for the first time in what is styled "Exception to the

judgment, and motion for a new trial," in which he excepted to the judgment rendered by the Supreme Court and prayed that it be set aside and a new trial granted him. The reasons given were as follows:

"I. The defendant has been compelled to testify against himself in violation of art. No. 5 of the law of Congress of July 1, 1902, in the following manner:

"The accused, taking advantage of the right conceded him in the third paragraph of article 15 of the General Orders, No. 58, did not testify in the Court of First Instance, and said court in its judgment considered this circumstance as prejudicial to the defendant; and the attorney general adduced the same circumstance in his brief in this court in the following words:

" 'No direct proof was presented by the defense to contradict the facts stated by the witnesses for the prosecution; nor did the defendant himself testify in his own favor to deny the grave crime with which he is charged.'

"And to overcome as far as possible the effect of this illegal procedure so prejudicial to the accused, his counsel in this court, speaking in his name, felt himself obliged to state to the court that the defendant did not go on the witness stand because he did not remember anything about the occurrence; which circumstance was considered by the court as a fact prejudicial to the defendant and appellant in the following words:

" 'The defendant, a lieutenant of constabulary in command at the Parian Barracks at Cebu, being intoxicated borrowed a carromata, which was without lights, from a friend and was found wandering about the streets therein by a municipal policeman named Almonte, who at his request drove him to the barracks. As to subsequent occurrences we have not the benefit of his recollection and must rely on the testimony of the witnesses for the prosecution and the circumstances of the case.' "

To which it was replied:

"The court having heard the petition of Attorney Kincaid, praying for a new trial of case No. 3176, the *United States* v. *Pendleton*, in which a decision was rendered by this court on the ninth of the present month of February, 1907, said, that although the fact that the defendant declined or failed to testify as a witness was taken into consideration by the Court of First Instance, this court, in deciding the cause did not take said fact into consideration, but rendered the decision in accordance with the proofs presented at the trial, and, therefore, the new trial solicited is denied."

Defendant puts aside the disclaimer of the Supreme Court as unimportant in an argument which is certainly difficult to represent if not to follow. He appealed to the Supreme Court to review the judgment of the lower court. He made a motion for a new trial in the Supreme Court, and that being denied, he now urges, not error committed in the Supreme Court, but error committed in the trial court. This is worked out and attempted to be justified by an argument that, it may be, we do not understand. It is said that the Supreme Court misapprehended the "function conferred upon it by Congress and the Philippine Commission in relation to reviewing the decisions of Courts of First Instance." That it seemed to be of opinion that it had "the same authority in this regard as was possessed by its Spanish predecessor, the audiencia," and "passed on the decision of the court below about as a reviewing court would pass on an equity proceeding upon written testimony submitted by affidavits and interrogatory depositions." And by doing so, counsel further urge that the Supreme Court did not have before it what they describe as "the supremely human element—the appearance of the witnesses and their manner on the stand, etc.," and, not having such element, could not judge of the effect of the evidence independently of the silence of the defendant, and could not determine therefore how much the error of the trial court, in considering such silence, controlled its judgment. The answer is that the Supreme Court had the power

to review the case and consider all that was necessary to the exercise of such power.  That power was invoked by defendant, and he secured from its exercise a reduction of three years in his sentence.  And *Trono* v. *United States*, 199 U. S. 521, may be cited as an answer to the contention.  In that case the power of review which the Supreme Court possessed over the judgment of the trial court was exerted to the extent of reversing a judgment and sentence for assault, and rendering a judgment for homicide.  *Trono* v. *United States* needs very little comment.  It declares the relation of the courts and the scheme of procedure existing in the Philippine Islands and brings the case at bar to the simple proposition, when stripped of ingenious suggestions, that an error which was made (if error was made, of which we express no opinion) at the trial in the court of first instance, and which was not repeated in the Supreme Court, is not a ground of legal complaint.

The third assignment of error is not discussed by counsel. It is, however, manifestly without merit.

*Judgment affirmed.*


Mr. Justice Harlan dissents.